SCOTT (MAUL v.).   See Case No. 9,306.
SCOTT (MEAD v.).   See Case No. 9,368.

---

# Case No. 12,542.

SCOTT et al. v. The MORNING GLORY.

[Hoff. Op. 448.]

District Court, N. D. California.   April 22, 1859.

ADMIRALTY—JURISDICTION—SERVICES IN PROCUR-
ING CREW—DOMESTIC SERVICE.

[Admiralty has no jurisdiction of a suit by shipping masters to recover for services in procuring a crew to navigate a vessel from one port to another in the same state.]

[This was a libel by Scott and Curtis against the Morning Glory.]

E. H. Hodges, for libelants.
Robert Rankin, for claimant.

HOFFMAN, District Judge. The libel in this case is filed to recover compensation for services rendered to the above vessel by the libelants, as shipping masters, in procuring 10 men to navigate the vessel from Benicia to this city. Exceptions to the libel are filed on the grounds (1) that the contract is not of admiralty jurisdiction; (2) that it is not alleged that any necessity existed for creating a lien on the vessel, by reason of want of funds in the master's possession, or of personal credit of the owners.

As to the first exception. In The Gustavia [Case No. 5,876], it was held by the judge that a ship's broker has a lien on a foreign vessel for services in shipping a crew, and for advances for their wages. On the other hand, it has been decided that stevedores had no lien, and this court has rejected the claim, in rem, of runners, or persons who are hired to solicit passengers. It is impossible not to recognize, in the recent decisions of the supreme court, a disposition to confine the admiralty jurisdiction within narrower limits, and restrict maritime liens to fewer cases than is desired by its more ardent advocates. The Yankee Blade, 19 How. [60 U. S.] 82. To give the court jurisdiction over a contract as maritime, it must relate "to the trade and business of the sea," or must be essentially maritime in its character. It is not enough that it relates to a vessel. Thus, the admiralty jurisdiction to enforce a mortgage of a ship has been denied by the supreme court. 8 How. [49 U. S.] And, in Philips v. The Thomas Scattergood [Case No. 11,106], Judge Hopkinson held that a seaman whose wages have been paid up to the termination of the voyage, but who afterwards remained on board the vessel moored at the wharf, has no claim for services which the admiralty can enforce. In the case of People's Ferry Co. v. Beers, the supreme court held that the jurisdiction does not extend to cases where a lien is claimed by the builders of a vessel for work done and materials furnished in its construction. 20 How. [61 U. S.] 393. If the jurisdiction be construed to embrace not only matters directly connected with maritime commerce, but those tending toward or conducive to it, a large and indefinite field would be opened. With respect to materials, etc., furnished to a vessel, the maritime lien of America creates a lien only when the vessel is foreign. The lien given by local laws for materials furnished to domestic vessels, can no longer, by a recent rule of the supreme court, be enforced in the admiralty.

The only other cases on which a lien arising out of contract is admitted, are those of seamen, engineers, etc., for services rendered on board during a voyage, express hypothecations for supplies or necessary funds, and the reciprocal liens which arise out of the contract of affreightment. But, if the claim of a shipping master, as a quasi material man, be allowed, on the ground that his services are necessary or advantageous to the vessel, I cannot perceive why, on the same principle, the claims of runners, or persons who solicit freight or passengers, or that of the printer who advertises the ship, or even that of the drayman who carts their stores, or many others who directly or indirectly contribute to her profitable employment, must not also be admitted. That such liens are not necessary to commerce, nor generally supposed to exist, may be fairly inferred from the fact that the books contain no reports of attempts made to enforce them, if we except the case of The Gustavia, already cited. I am persuaded that the admiralty jurisdiction, as understood by the supreme court, will not be extended by that tribunal to em-

brace a large and novel class of cases, the assertion of cognizance over which would be to forsake ancient and well-defined boundaries, and to enter upon a broad and indefinite field of jurisdiction. I think, therefore, that the first exception should be sustained.

But, even if this court had jurisdiction over this contract to enforce a lien in rem, it is clear that the libel does not allege sufficient to create that lien. In the case of The Gustavia, relied on by the advocate for the libelants, the ship's broker is treated as a material man. The rules with respect to liens for materials and supplies must therefore be applied to him. He certainly can have no higher rights than the person who supplies materials to a foreign ship. In the case of Pratt v. Reed [19 How. (60 U. S.) 359], it is decided by the supreme court that, to create a maritime lien for supplies furnished to a vessel, there must not only be an actual or apparent necessity for the supplies, but there must be a necessity for resorting to the credit of the vessel. In other words, it must appear that they could not have been obtained on the credit of the owners. If such a state of facts is necessary to give rise to the lien, it is clear that it should be alleged in the pleadings and proved at the trial. The libel in this case contains no such allegation. The second exception must therefore be sustained. The defect might, if the facts justify such a course, be cured by amendments, but the view taken of the first exception renders it useless. Exceptions sustained.